JOSEPHINE ROBERTS v. J. M. SAUNDERS AND M. S. COX, PARTNERS.

(Filed 22 September, 1926.)

1. Wills—Interpretation—Intent.

The courts will construe a will as a whole, giving each word and phrase effect to carry out the intent of the testator, and harmonize the language therein employed when such interpretation is reasonable for the purpose.

2. Same—Statutes—Fee Simple—Presumption.

The statutory presumption that a devise of land shall be construed in fee, etc., gives way to the intent of the testator as gathered from the proper construction of the instrument as a related whole. C. S., 4162.

3. Same—Estates—Life Estates.

Under a devise to the testator's wife of all of his "estate real and personal," and by a later paragraph all of the rest of the testator's property "as above stated" during her widowhood, and should she remarry her dower "according to law": Held, only a life estate, according to the testator's intent, is given to his widow, and her conveyance of a fee-simple title is ineffectual, the statutory presumption of a fee-simple title being inoperative.

4. Deeds and Conveyances—Registration—Seal Omitted—Presumptions —Curative Statute.

Where a deed under which a party claims title to land is not introduced, and recites that the seal of grantor was affixed, the introduction of the book of the register of deeds not showing the seal is not conclusive that the seal was not affixed to the instrument itself. It further appears that the defect in this respect, if any, was cured by chapter 64, Public-Local Laws of 1924.

CONTROVERSY without action, before *Grady, J.,* at May Term, 1926, of BEAUFORT.

On 12 July, 1884, Johnson Roberts made his last will and testament, which is as follows:

"Know all men by these presents, that I, Johnson Roberts, of the county of Beaufort and State of North Carolina, do now ordain this my last will and testament in the year of our Lord 1884, 12 July, in form as follows:

"I give to my beloved wife, Martha Roberts, all my estate, real and personal, except fifty acres of land, which I give my daughter, Alviana Downs, which said fifty acres, lying on the east side of public road, beginning in the road leading to Edward's Bridge and running with the Savannah Road and running with said road to the road leading from the Peny place to John Brimage's into W. A. Blount's line, and with said line to Thomas Godley and J. J. Roberts' corner, back with the

S. House Road to the beginning, containing fifty acres more or less, said land to her for her lifetime and then to her son, Johnson R. Downs, at her death.

"All the rest of my property I give to my wife as above stated, during her widowhood; if she should marry, she would be entitled to a dower on the estate in form according to the laws of North Carolina.

"And I ordain my wife, Martha Roberts, sole executrix of this my last will and testament.

"W. H. Roberts and Charles A. Roberts, J. M. Roberts, J. J. Roberts, and Annie E. Roberts, all have a certain part of land given them by deed, which is their part of landed estate, for which they have a deed, day and date above mentioned."

This will was duly admitted to probate. On 14 January, 1885, after the death of Johnson Roberts, his widow, Martha Roberts, and Joseph J. Roberts and his wife executed a mortgage on the land in controversy to John S. McDonald, which was duly recorded. Default having been made in the payment of the indebtedness secured by said mortgage, George H. Brown, Jr., executor of John McDonald, sold the land at public auction under power contained in said mortgage and executed and delivered a deed for said land, together with other property, to P. A. Nicholson. This deed was duly registered. The original deed has been lost, but the record in the register of deeds office does not disclose the seal. The original deed, however, contains this recital: "In witness whereof, the said G. H. Brown, executor as aforesaid, has hereunto set his hand and seal, the day and year first above written."

Thereafter, on 18 March, 1899, Nicholson and wife conveyed the land to Joseph J. Roberts and Josephine F. Roberts, his wife. This was an estate by entirety, and Joseph J. Roberts died more than ten years prior to 29 October, 1925.

On 29 October, 1925, Josephine Roberts, the plaintiff, entered into a contract with the defendants to sell the timber on the land, and tendered proper deed to the defendants for said timber. The defendants declined and refused to accept the deed, contending that Josephine Roberts is not the owner in fee simple of said property because the will of Johnson Roberts did not convey a fee-simple title to Martha Roberts. Martha Roberts survived her husband and is now dead, having never remarried. At the time of his death Johnson Roberts left him surviving as his only heirs at law his five children, to wit: W. H. Roberts, Charles A. Roberts, J. M. Roberts, J. J. Roberts, Alvina Downs, and Annie Roberts, who are all mentioned in his will.

There was judgment decreeing that the plaintiff was the owner of the land in fee simple, and that the defendants be directed to comply with the said contract of sale.

From the judgment so rendered the defendants appealed.

*Wiley C. Rodman for plaintiff.*
*Ward & Grimes for defendants.*

BROGDEN, J. Two questions are presented for solution, to wit:

1. Did Martha Roberts take a fee-simple estate under the will of her husband, Johnson Roberts?

2. Is the deed from George H. Brown, Jr., executor of John McDonald, sufficient to convey a fee-simple estate, notwithstanding the absence of a seal on the record in the office of the register of deeds?

C. S., 4162, provides that when real estate is devised to any person that the same shall be held and construed to be a devise in fee simple unless the devise shall, in plain and express words show, or it shall be plainly intended by the will, or some part thereof, that the testator intended to convey an estate of less dignity.

Therefore, if the will does contain plain and express words, manifesting an intention to convey an estate of less dignity, the statutory presumption no longer applies.

An examination of the will discloses that in the second paragraph a fee simple is devised Martha Roberts in these words: "I give to my beloved wife, Martha Roberts, all my estate, real and personal," etc. In the third paragraph the language used by the testator is "all the rest of my property I give to my wife as above stated during her widowhood; if she should marry, she would be entitled to a dower on the estate in form according to the laws of North Carolina."

It is now a truism of law that the intent of the testator is the object to be sought in construing a will, and that this dominant intent must be found in an examination of the instrument in its entirety. To this end all of the clauses of a will should be reconciled, if possible, because the maker is presumed to have intended that each and every clause should take effect. This idea is thus expressed by *Justice Brown* in *Shuford v. Brady,* 169 N. C., p. 226: "It is true that in the first paragraph of his will the testator uses language which would confer upon his son Alexander a fee-simple estate to the property devised, but it is well settled that the intent of the testator is the object to be sought in construing a will, and this intent must be gathered from a consideration and examination of the entire instrument."

*Adams, J.,* in *Pilley v. Sullivan,* 182 N. C., 496, says: "Accordingly, the entire will should be considered; clauses apparently repugnant should be reconciled; and effect given wherever possible to every clause and to every word."

Again, in *Foil v. Newsome,* 138 N. C., 115, the Court holds that "prior words of general signification may be controlled and modified as to their meaning by subsequent expressions and the intention of the testator reached from the whole will."

13—192

While the second paragraph of the will gives an estate in fee simple, by statutory presumption, it will be observed that the testator does not actually state in express language that the property is given to his wife in fee simple. In the third paragraph of the will the testator says: "I give to my wife, as above stated, during her widowhood." Hence the words "as above stated" refer to the nature of the estate the testator intended to devise as distinguished from the statutory presumption. Then, too, the fact that the estate was reduced from a life estate to a dower interest, in the event of remarriage, is a manifest indication of the testator's purpose to devise his wife an estate of less dignity than a fee simple.

We are of the opinion that the controlling intention of the testator was to give this property to his widow for her widowhood, and, in the event she married, to devise to her the same interest in the property that the law gave to widows, to wit, a dower interest therein. This construction of the will would vest only a life estate in the widow, Martha Roberts.

While it is true that in the last paragraph of the will the testator refers to the fact that he has given his children their part of the landed estate by deed, this language must be construed in subordination to the dominant intent of the testator as gathered from the entire instrument.

We hold therefore that Martha Roberts took a life estate under said will, and that the plaintiff cannot deliver to the defendants a fee-simple title to said property.

In regard to the second question presented by the appeal, the mere fact that no seal appeared upon the records in the office of the register of deeds is not conclusive as to whether or not a seal was actually affixed to said deed. *Heath v. Cotton Mills,* 115 N. C., 202; *Strain v. Fitzgerald,* 130 N. C., 600.

However, chapter 64, Public Laws, Extra Session, 1924, provides that "all deeds executed prior to ratification of this act by any sheriff, commissioner, receiver or other officer authorized to execute a deed by virtue of his office or appointment, in which the officer has omitted to affix his seal after his signature, shall be good and valid nevertheless; provided this act shall not apply to actions pending at the date of the ratification of this act."

The act was ratified 22 August, 1924, and this suit was brought apparently on 12 February, 1926. The act referred to therefore cures any defect which might have existed in said deed.

Reversed.