MARCELLITE POOL HICKS v. UNBORN CHILDREN OF MARCELLITE POOL HICKS, AND CHARLES O'H. GRIMES, GUARDIAN AD LITEM.

(Filed 8 May 1963.)

**Evidence § 4;　Wills § 33—**

Evidence that the life tenant at the time of the hearing was some 73 years old and had had an operation removing her ovaries *held* sufficient

to rebut the presumption of the possibility of further issue and to warrant the distribution of the remainder prior to her death.

APPEAL by the guardian *ad litem* from *Clark, J.,* November Regular Civil Term 1962 of WAKE.

This is an action to determine the ownership of certain government bonds, Series E, issued in the name of Charles G. Hicks, Jr., in the face amount of $1,925.00, and a cash balance of $15.75. Charles O'H. Grimes was appointed guardian *ad litem* for the unborn children of Marcellite Pool Hicks pursuant to the provisions of G.S. 1-65.2, 1961 Cumulative Supplement.

The pertinent facts which are not in dispute are as follows:

The bonds and cash involved herein are being held by the Clerk of the Superior Court of Wake County, as custodian, under the provisions of the last will and testament of S. C. Pool, deceased, which will was duly probated in the Superior Court of Wake County before the Clerk on 9 March 1907.

Under the provisions of the aforesaid will, S. C. Pool devised to his daughter, Marcellite Pool (now Hicks), "the Sasser Farm" for life, and after her death to her children.

Marcellite Pool intermarried with Charles G. Hicks on 7 July 1907, and they have lived together ever since as husband and wife and their respective ages are now: Charles G. Hicks, 76, and Marcellite Pool Hicks, 73. There was born to this union one child, Charles G. Hicks, Jr., on 1 August 1908.

Charles G. Hicks, Jr. died testate on 4 April 1962, leaving surviving him his widow and his parents but no children. Charles G. Hicks, Jr. made his widow, Virginia Presnell Hicks, the sole beneficiary under his last will and testament. Thereafter, on 18 August 1962, Virginia Presnell Hicks, by a duly executed written instrument, transferred all her right, title and interest in and to said bonds and cash referred to herein to the plaintiff, Mercellite Pool Hicks.

Some time prior to the death of Charles G. Hicks, Jr., a special proceeding was instituted in the Superior Court of Wake County pursuant to which "the Sasser Farm" was sold for reinvestment of the proceeds, and the bonds and cash referred to herein represent the reinvestment now in the custody of the Clerk of the Superior Court of Wake County.

Evidence was introduced in the court below to the effect that in 1928 the plaintiff underwent surgery for the removal of her ovaries which made it impossible for her thereafter to conceive and bear a child. Her family physician since 1950, an admitted medical expert and

specialist in surgery and gynecology, testified to the effect that it was his unqualified opinion that it is now impossible for the plaintiff to conceive and bear a child.

Upon the forgoing facts the court concluded "(t)hat the plaintiff, Marcellite Pool Hicks, is now physically incapable of bearing children, that as to her the possibility of issue is now extinct." Whereupon, the court held and entered judgment to the effect that the plaintiff, Marcellite Pool Hicks, is the absolute owner of the bonds and cash balance referred to herein and directed the Clerk of the Superior Court of Wake County to deliver said bonds and cash to her.

The guardian *ad litem* appeals, assigning error.

*Mordecai, Mills & Parker for plaintiff appellee.*
*Charles O'H. Grimes, guardian ad litem.*

DENNY, C.J.   The sole assignment of error is to the signing of the judgment for that such judgment is contrary to law.

The appellant contends there is an irrebuttable presumption that the possibility of issue is not extinct until death. Therefore, he argues the court was in error in its conclusion with respect to the inability of the plaintiff to conveive and bear children, and, as a consequence of this erroneous conclusion, the court below erroneously held that the plaintiff, Marcellite Pool Hicks, is the owner of the bonds and cash balance now held by the Clerk of the Superior Court of Wake County, as custodian, under the provisions of the last will and testament of S. C. Pool, deceased, citing *Shuford v. Brady,* 169 N.C. 224, 85 S.E. 303; *Prince v. Barnes,* 224 N.C. 702, 32 S.E. 2d 224; *McPherson v. Bank,* 240 N.C. 1, 81 S.E. 2d 386 and *Bank v. Hannah,* 252 N.C. 556, 114 S.E. 2d 273.

Ordinarily, the law presumes that the possibility of issue is not extinct until death. *Bank v. Hannah, supra; McPherson v. Bank, supra.* However, this presumption is rebuttable.

In *McPherson v. Bank, supra,* Johnson, J., speaking for the Court, said: "While in many jurisdictions, including England, the question whether the possibility of issue is ever extinct, has been re-examined in the light of exact processes of medical science by which in given cases sterility or impotency may be shown as matters of scientific certainty, nevertheless, thus far this Court has not been presented with a situation sufficiently compelling to warrant relaxation of the common law rule."

It is said in 57 Am. Jur., Wills, section 1249, at page 827: "Where a testamentary gift is in some way conditioned upon a designated wom-

an's having issue or further issue, as, for example, in a gift to the child or children of a named woman, the question sometimes arises whether the gift may be distributed prior to that woman's death. Although it is a recognized legal presumption that the possibility of issue is never extinct as long as a person lives, the courts nevertheless have on occasion sanctioned distribution of a testamentary gift prior to the death of the woman on whose failure of issue or further issue it was conditioned, upon the theory that, because of her age or physical condition, the improbability of her having children (or more children) has been established to such a degree that such distribution is permissible."

In *United States v. Provident Trust Co.*, 291 U.S. 272, 78 L. Ed. 793, the identical question involved on the appeal now before us was raised and considered. The lower court had held that the woman involved was incapable of bearing children since she had undergone surgery for the removal of her "uterus, Fallopian tubes, and both ovaries." The Supreme Court of the United States said: "(T)he presumption here involved had its origin at a time when medical knowledge was meager, and many centuries before the discovery of anaesthetics and, consequently, before surgical operations of the kind here involved became practicable. It was not until a comparatively recent period, therefore, that the effect of such an operation was disclosed to observation, and the incontrovertible fact recognized that a woman subjected thereto was permanently incapable of bearing children.

" * * * Whether in particular instances so-called irrebuttable presumptions are, in a more accurate sense, rules of substantive law rather than true presumptions, is a matter in respect of which a good deal has been said by modern commentators on the law of evidence. (Citations omitted) But it is unnecessary to consider that interesting distinction, since, as will appear, the presumption in question in this instance must be dealt with as open to rebuttal and, therefore, in any aspect of the matter, as a true presumption.

"The presumption generally has been held to be conclusive when the element of age alone is involved, albeit Lord Coke's view that the law seeth no impossibility of issue, even though both husband and wife be an hundred years old (Co. Litt. 551; 2 Bl. Com. 125), if now asserted for the first time, might well be put aside as a rhetorical extravagance. But the presumption, even where age alone is involved, has not been universally upheld as conclusive or applied under all circumstances. * * *" The judgment of the court below was affirmed.

We hold that the medical evidence adduced in the trial below was sufficient to rebut the legal presumption that the possibility of issue is not extinct until death and to support the conclusion of the court

below that the plaintiff, Marcellite Pool Hicks, is now physically incapable of bearing children; that as to her, the possibility of issue is now extinct.

The Possibility of Issue Extinct is the topic of annotations in 67 A.L.R. 538 and in 146 A.L.R. 794.

The judgment of the court below is

Affirmed.